*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. A. BROCKMAN, Minor.

UNPUBLISHED
March 14, 2024

No. 366681
Wayne Circuit Court
Family Division
LC No. 2014-516286-NA

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, KAB, under MCL 712A.19b(3)(j) (reasonable likelihood that the child will be harmed if returned to parent), and (m)(*ii*) (parent convicted of violation of criminal statute involving use of force or threat of force). We affirm.

## I. BACKGROUND

On September 30, 2022, the Department of Health and Human Services (DHHS) filed a permanent custody petition requesting that the trial court take jurisdiction over KAB, and find statutory bases for termination of respondent's parental rights under MCL 712A.19b(3)(g), (j), and (m)(*ii*). In support of its petition, the DHHS alleged that on June 20, 2022, Children's Protective Services (CPS) received a complaint contending that (1) KAB was being neglected due to domestic violence while in the care of respondent and (2) a domestic violence incident between respondent and his then live-in partner, DB, took place while KAB and other minor children were present. According to the petition, this was not KAB's first exposure to domestic violence while in respondent's care; the petition alleged that KAB had previously been removed from respondent's care due to domestic violence incidents involving KAB's mother, DR. DR's parental rights to KAB were terminated in July 2021. The petition alleged that, despite this, while KAB was in respondent's care between July and August, 2022, DR was posting on her Facebook page recent photos and videos with KAB.

The petition also detailed information regarding respondent, including that (1) respondent had a long history of domestic violence with past female partners, (2) respondent's most recent partner, DB, made several police reports regarding domestic violence instances between her and respondent, (3) on June 11, 2022, respondent choked DB in his home while KAB and three other

-1-

minor children were present, including one minor child who witnessed the event, and (4) DB reported to CPS that respondent had threatened her at her workplace and threatened to kill her. The petition further alleged that on June 30, 2022, DB showed up to respondent's home and smashed the windows out of his home with a metal shovel while KAB was both present in the home and near the windows, and that DB later reported that after she smashed the windows out of his house, respondent stood outside his home holding a gun with KAB standing next to him. The petition also stated that respondent had failed to benefit from his prior completed court-ordered treatment plan to rectify his domestic violence issues as he is still causing harm to KAB by engaging in domestic violence with his new partner. The petition additionally alleged that respondent was offered services to rectify his domestic violence issues after the incidents with DB and prior to KAB's removal, but he refused.

Following a combined adjudicatory and evidentiary hearing on May 23, 2023, the trial court found that it had jurisdiction to terminate respondent's parental rights. Further, the trial court found that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(j) and (m)(*ii*). The trial court stated that it did not have evidence to support termination under MCL 712A.19b(3)(g). The trial court subsequently determined that termination of respondent's parental rights was also in the best interests of KAB.

This appeal followed.

## II. STATUTORY GROUNDS

On appeal, respondent argues that the trial court clearly erred by terminating his parental rights to KAB under MCL 712A.19b(3)(j) and (m)(*ii*). We disagree.

"We review the trial court's determination of statutory grounds for clear error." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted).

MCL 712A.19b(3)(j) provides that the

court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence . . . [that t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination is proper pursuant to MCL 712A.19b(3)(j) if there is a potential of physical or emotional harm to the child. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "A parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

At the combined adjudicatory and evidentiary hearing, the CPS investigator, Kevin Rader, testified that he authored the permanent custody petition after receiving a complaint in June 2022

alleging several instances of domestic violence between respondent and DB. Rader further testified that respondent admitted that he allowed DR to see KAB even though (1) her parental rights were terminated and (2) Rader expressly informed respondent on multiple occasions that he was not to permit DR to have contact with KAB. Rader also testified regarding Facebook photos that he collected from DR's Facebook page in July and August 2022 and that were admitted into evidence showing DR with KAB. Rader further testified about the long history of severe domestic violence between respondent and DR. In regard to the domestic violence between respondent and DB that led to the current petition, Rader stated that KAB did not witness it but was present in the home.

DB testified that she was respondent's girlfriend and lived with him for over a year. DB testified regarding the police report that she filed against respondent on June 10, 2022. She stated that respondent grabbed her by her hair, she fell to the ground, respondent sat on top of DB's chest, and respondent choked DB with both of his hands around her neck until DB's two-year-old daughter walked into the room. KAB and two other minor child were also present in the home during this domestic violence incident. DB further testified that respondent had beaten her with a broom in April 2022 and slapped her across the face during another incident in 2022. DB also testified that DR informed her that respondent allowed DR to take KAB "to daycare and stuff."

In addition, respondent testified and admitted that he permitted DR to visit KAB after being told by Rader that he was not supposed to do so because he wanted KAB to see DR. Respondent explained that while there was domestic violence between him and DR, he was given a reunification plan that he followed, which was why he was reunited with KAB. Respondent denied ever hitting DB. However, respondent admitted that during the pandemic, he pleaded guilty to assault with intent to do great bodily harm less than murder after assaulting another woman.

The trial court did not clearly err by terminating respondent's parental rights to KAB under MCL 712A.19b(3)(j) and finding that there was a reasonable likelihood that KAB would be harmed if returned to respondent. The evidence showed that respondent consistently permitted KAB to be in contact with DR despite DR's parental rights being terminated and despite being directed not to allow this contact. Respondent knew that DR's rights were terminated to KAB because DR engaged in domestic violence against respondent, that DR was violent, and that he and DR had a violent and hostile relationship. Despite this, he still got together with DR and exposed KAB to DR. Thus, respondent exposed KAB to potentially dangerous and harmful situations.

Further, respondent previously completed a case service plan that included domestic violence and anger management counseling after KAB was removed from his care in 2021. KAB was released to respondent on June 8, 2022. Only weeks later, CPS received a complaint regarding respondent and domestic violence that led to the petition being filed in this case. Respondent clearly did not benefit from his previous case service plan, yet he still refused additional services intended to rectify his domestic violence issues before KAB was again removed from his care.

Finally, respondent continued to put himself in volatile relationships with women. While there is no indication that he was ever violent with KAB, his ability to be violent while she was present in the home places her at risk of harm. Accordingly, based on our review of the record,

we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination was appropriate under MCL 712A.19b(3)(j).[1]

## III. BEST INTERESTS

Respondent argues that the trial court erred when it determined that termination of respondent's parental rights was in the best interests of KAB. We disagree.

This Court reviews "for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the children's best interest must be established by a preponderance of the evidence. *Id.* at 733. The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.*, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. When determining whether termination is in the best interests of the child, the trial court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

We conclude that the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of KAB. Rader and DB both presented detailed testimony during the combined evidentiary and adjudicatory hearing regarding respondent's proclivity to domestic violence while minor children were in his home. Respondent's home is thus a dangerous, unsafe, and an unstable environment for KAB. Further, petitioner presented significant evidence of respondent continuously permitting DR to see KAB despite being told not to and the dangers associated with doing so.

In addition, Rader testified that respondent would not benefit or learn from a case service plan because he had previously completed a treatment plan that required him to participate in

---

[1] Only one statutory ground is required to terminate a respondent's parental rights; therefore, we need not address respondent's argument that the trial court erred by terminating his parental rights under MCL 712A.19b(3)(m)(*ii*). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012).

domestic violence prevention classes, but he still engaged in domestically violent relationships with women after he completed the plan.

Finally, petitioner presented evidence that KAB was happy in her foster home, she had been there for a significant period of time, her two half siblings were already adopted by her foster family, and the foster family indicated that they were interested in adopting KAB as well. Thus, the foster family could provide KAB with the permanency, stability, and finality that respondent could not.

Although petitioner did indicate that KAB had a good bond with respondent, this Court has concluded that the strength of a child's bond is only one factor to be considered, and that other factors, such as a child's need for permanence, stability, and safety, may overcome that strong bond. *In re White*, 303 Mich App at 714-716. Respondent's violent tendencies, proclivity for domestic violence, placing KAB in DR's care despite the danger of doing so, and KAB's current stable foster care placement all support the trial court's finding that it was in KAB's best interests to terminate respondent's parental rights.

Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of KAB.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood